UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHN ROBERT SMITH,

        Plaintiff,

v.

JEREMY BUSH et al.,

        Defendants.
_____/

Case No. 1:23-cv-579

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Deputy Director Jeremy Bush and DRF Warden Randee Rewerts.

Plaintiff alleges that on October 3, 2022, the zipper on his state-issued winter coat broke. (ECF No. 1, PageID.3.) He submitted a request for a replacement coat that same day. (*Id.*) On October 19, 2022, Plaintiff received a callout to the quartermaster, where he exchanged his old

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

coat for a new one. (*Id.*) Plaintiff, however, "discovered that there was a difference between the new coat and old coat." (*Id.*) According to Plaintiff, the new coat "lacked an outer shell that would afford the minimum protection from the cold, rain[,] and wind." (*Id.*)

On October 19, 2022, Plaintiff sent a letter to Defendant Rewerts, complaining about the new coat and asking for an investigation "into the viability of a more suitable winter coat." (*Id.*) That same day, Plaintiff sent a letter to Defendant Bush, enclosing a copy of his letter to Defendant Rewerts. (*Id.*) Plaintiff asked Defendant Bush to review the letter and asked about the "procedure used to upgrade the coats." (*Id.*)

On October 24, 2022, Plaintiff filed a Step I grievance about the matter, in which he explained that he had sent letters to Defendants Rewerts and Bush about the coat. (*Id.*, PageID.3–4.) His Step I grievance was rejected on October 28, 2022, for "failing to attempt to resolve." (*Id.*, PageID.4.)

On November 2, 2022, Plaintiff received a response to his letter to Defendant Rewerts. (*Id.*) That response stated that "winter coats can be purchased [through] approved vendors" and that the winter coats were created and approved "according to MDOC specification." (*Id.*) Plaintiff did not receive a response from Defendant Bush. (*Id.*)

On November 4, 2022, Plaintiff filed his Step II grievance appeal, "declaring that [he] did attempt to resolve the complaint via a letter to [Defendants Bush and Rewerts] and demanding that the grievance be processed and then heard on its merits." (*Id.*, PageID.5.) Plaintiff received no response to his Step II appeal. (*Id.*) Plaintiff filed his Step III appeal on November 28, 2022. (*Id.*) On February 21, 2023, his Step III appeal was rejected. (*Id.*)

On March 2, 2023, Plaintiff sent a second letter to Defendant Bush "in a further attempt to resolve the complaint of the inadequacy of the new coats." (*Id.*) On March 11, 2023, Plaintiff sent

4

a letter to DRF Grievance Coordinator L. Becher (not a party), asking how to file a grievance against the Deputy Director. (*Id.*, PageID.5–6.) Plaintiff did not receive responses to either letter. (*Id.*, PageID.6.)

On March 13, 2023, Plaintiff filed a second Step I grievance, declaring that he had attempted to resolve his complaints about the coat by sending a letter to Defendant Bush, with copies of such letter sent to MDOC Director Washington and Defendant Rewerts. (*Id.*) Plaintiff's grievance was rejected on April 5, 2023. (*Id.*, PageID.7.) His Step II and III appeals were rejected on April 24, 2023, and May 17, 2023, respectively. (*Id.*, PageID.7–8.)

Plaintiff claims that from October 19, 2022, through April 21, 2023, DRF experienced "weather consisting of extreme cold temperatures, freezing rain[,] and high winds." (*Id.*, PageID.8.) According to Plaintiff, he was "forced to stand in the extreme cold temperature, freezing rain[,] and high winds for long periods of time (15–30 minutes) because of having mandatory daily callouts to the medication lines as well as other activities that required Plaintiff to be outside." (*Id.*) Plaintiff avers that Defendants are

> both aware of the need for a more suitable new coat to be issued to inmates housed by the MDOC, and have chosen purposefully to ignore the deficiency of the new coat, whether for their own ambition of advancement or other type of gain, by directing [Michigan State Industries (MSI)] to manufacture an inferior winter coat to be issued to inmate[s], while allowing MSI to manufacture and sell a winter coat, that is adequate for the severe Michigan winters, to inmates.

(*Id.*)

Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment right to be "free from the unnecessary infliction of cruel and unusual punishment as an incarcerated person." (*Id.*) He seeks declaratory relief, as well as prospective injunctive relief in the form of an order directing Defendants "to provide inmates with an adequate winter coat." (*Id.*, PageID.9.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability and Handling of Plaintiff's Grievances and Letters

Plaintiff seeks to hold Defendants Bush and Rewerts liable because of their respective positions as MDOC Deputy Director and DRF Warden. He contends that Defendant Rewerts provided an inadequate response to his letter regarding the alleged inadequacy of the new coat and that Defendant Bush failed to respond to his letters. As an initial matter, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Therefore, although it is clear that Plaintiff disagreed with Defendant Rewerts' response to Plaintiff's letter, as well as the responses to his various grievances, Defendants' conduct did not deprive Plaintiff of due process.

Further, the United States Court of Appeals for the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who

7

merely denies an administrative grievance. *Id.* Moreover, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn*, 1994 WL 105907, at *1 (discussing that there is no constitutional right to a grievance procedure).

Additionally, government officials, such as Defendants Bush and Rewerts, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, as discussed *supra*, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific

> incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Bush and Rewerts encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's only allegation regarding Defendant Bush is that he failed to respond to Plaintiff's two letters regarding the alleged inadequate coat. Plaintiff, however, has not alleged any facts from which the Court could infer that Defendant Bush was even aware of Plaintiff's letters and deliberately failed to respond. Moreover, Plaintiff's only allegation regarding Defendant Rewerts is that his response to Plaintiff's letter was inadequate. As noted above, § 1983 liability cannot be imposed solely on the basis that Defendant Rewerts failed to act based upon Plaintiff's letter. *See Shehee*, 199 F.3d at 300. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Bush and Rewerts were personally involved in the alleged violations of Plaintiff's constitutional rights. For that reason alone, Plaintiff's claims against Defendants Bush and Rewerts are subject to dismissal. Nevertheless, the Court has addressed the merits of Plaintiff's Eighth Amendment claim below.

### B. Merits of Plaintiff's Eighth Amendment Claim

As noted *supra*, Plaintiff suggests that the provision of what he believed to be an inadequate winter coat violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes*

9

*v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

To prevail on an Eighth Amendment claim, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

10

Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

The failure to provide adequate winter clothing to inmates who are required to go outside during the winter can constitute an Eighth Amendment violation. *See Knop v. Johnson*, 977 F.2d 996, 1012–13 (6th Cir. 1992); *Ellis v. Mohr*, No. 1:13-cv-1058, 2017 WL 4155769, at *11 (N.D. Ohio Sept. 19, 2017). Here, Plaintiff was not completely denied a winter coat; instead, he asserts that the new coat he received "lacked an outer shell that would afford the minimum protection from the cold, wind[,] and rain." (ECF No. 1, PageID.3.) Plaintiff contends that he was "forced to stand in the extreme cold temperature, freezing rain[,] and high winds for long periods of time (15-30 minutes) because of having mandatory daily callouts to the medication lines as well as other activities that required Plaintiff to be outside (i.e. meal line and recreation time)." (*Id.*, PageID.8.)

Other than suggesting that the coat lacked the "outer shell" that his prior coat had, Plaintiff's complaint is devoid of facts describing how exactly the new coat was insufficient to provide adequate protection from winter conditions. Although Plaintiff alleges in a conclusory manner that "the new coats did not afford the minimum protection" when there were "extreme cold temperatures," he fails to allege sufficient *facts* to support his conclusory assertion. (ECF No. 1, PageID.8.) Without additional supporting factual allegations, Plaintiff's sole allegation that the new coat lacked the same type of "outer shell" as Plaintiff's prior coat does not on its own suggest that the new coat was inadequate.

11

Furthermore, although Plaintiff alleges that he had to endure winter conditions for periods of time while wearing this coat, he fails to suggest that he suffered any injuries or illness because of such conditions. Instead, Plaintiff suggests only that he suffered the usual discomforts of winter, which is insufficient to rise to the level of an Eighth Amendment violation. *See, e.g.*, *Mays v. Springborn*, 575 F.3d 643, 648–49 (7th Cir. 2009) (concluding that a prisoner's allegations regarding exposure to cold did not rise to the level of objectively serious harm necessary for an Eighth Amendment claim where the prisoner alleged that he caught colds, suffered hurt ears and numb hands, and felt frostbite, but failed to show that he was exposed to cold for long periods of time or that he suffered anything more than the usual discomforts of winter); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (concluding that allegations regarding uncomfortable temperatures alone cannot support an Eighth Amendment claim). In short, Plaintiff appears to ask the Court to find plausibility in his claims from mere ambiguity. For these reasons, Plaintiff has failed to allege sufficient facts from which the Court could infer that Plaintiff was exposed to objectively serious harm from the provision of the new winter coat. Moreover, Plaintiff fails to allege sufficient facts to show that Defendants Bush and Rewerts were aware of a substantial risk of harm to Plaintiff and disregarded that risk. *See, e.g.*, *supra* Section II.A.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state an Eighth Amendment claim against Defendants Bush and Rewerts.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir.

1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

       This is a dismissal as described by 28 U.S.C. § 1915(g).

       A judgment consistent with this opinion will be entered.


Dated:   June 28, 2023                          /s/ Ray Kent
                                                                     Ray Kent
                                                                     United States Magistrate Judge